UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RONALD H. BEHRMANN,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>ABB INC., *et al*.,<br><br>　　　　　　Defendants. | CASE NO. 3:20-cv-05685<br><br>ORDER GRANTING DEFENDANT AURORA PUMP COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO STRIKE |

This matter comes before the Court on Defendant Aurora Pump Company's ("Aurora" or "Defendant") Motion for Summary Judgment (Dkt. 165) and Motion to Strike (Dkt. 191 at 6). The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein. Oral argument is not needed to decide these motions.

## I.     RELEVANT FACTS AND PROCEDURAL HISTORY

**A. RELEVANT FACTS**

Plaintiff, Ronald H. Behrmann, worked on ships for nearly 30 years. Dkt. 180. First, while serving in the U.S. Navy, and later while working in the Todd and Lockheed Shipyards in

ORDER GRANTING DEFENDANT AURORA PUMP COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO STRIKE - 1

1   Seattle, Washington. *Id.* Mr. Behrmann now has mesothelioma. *Id.* The facts are largely

2   undisputed and will be considered in the light most favorable to the Plaintiff.

3         Aurora manufactured pumps and asbestos-containing gaskets and packing for those

4   pumps for use on ships. *Id.* at 3. Replacing or manipulating asbestos-containing gaskets and

5   packing releases asbestos dust. *Id.* Plaintiff alleges that Aurora pumps were present on at least

6   eight ships where Plaintiff worked, and possibly ten more. Dkt. 180 at 6–7. Plaintiff also alleges

7   that Aurora supplied the replacement gaskets and packing used in their pumps. Dkt. 180 at 7.

8         Behrmann spent the majority of his career as an electrician. He enlisted in the Navy in

9   1958 and from 1959–1962 he served on the USS Burton Island as an electrician's mate. Dkt.

10  180 at 3. Navy records show that two Aurora manufactured fresh-water pumps were on the USS

11  Burton Island and that they used asbestos packing and sheet gaskets. *Id.* at 4. As an electrician's

12  mate, Behrmann did not work directly on pumps, but he worked in close quarters with

13  machinists and pipe fitters who did.

14        After leaving the Navy in 1962 and going to work at the Lockheed Shipyard, Behrmann

15  continued to work on ships and in close quarters with machinists and pipefitters until the early

16  1980s when he became the manager of ship repair master scheduling and his job duties became

17  primarily off-ship. Dkt. 180. However, he alleges that at least ten ships he worked on at the

18  Lockheed Shipyard contained Aurora pumps, that those pumps used Aurora replacement parts,

19  and that pump gaskets and packing were often manipulated to release asbestos dust in his

20  presence. *Id.* at 7–8.

21  **B. PENDING MOTION**

22        In the pending motion, Aurora moves for summary judgment. Dkt. 165. Aurora argues

23  that maritime law applies and that Plaintiff's claims should be dismissed because he cannot show

24

ORDER GRANTING DEFENDANT AURORA PUMP COMPANY'S MOTION FOR SUMMARY JUDGMENT
AND DENYING MOTION TO STRIKE - 2

either that exposure to asbestos from an Aurora product was a substantial factor in causing his mesothelioma or that Aurora had a duty to warn him about the dangers of asbestos. *Id.* at 5–6. Plaintiff responded in opposition, arguing that Washington law applies and that genuine issues of material fact preclude summary judgment. Dkt. 180.

In reply, Defendant moves to strike the report of Plaintiff's maritime expert Captain Arnold Moore and miscellaneous sales records. Dkt. 191 at 6. Plaintiff responded in opposition to Defendant's motion to strike (Dkt. 217). Defendant replied to the motion to strike and withdrew some of its challenges. Dkt. 220. The only remaining contested issue on the motion to strike is whether Captain Moore's report should be stricken because Plaintiff did not attach copies of the documents used as sources for his report.

## II. DISCUSSION

### A. CHOICE OF LAW

As discussed in previous orders in this matter (Dkts. 211 and 219), maritime law applies because the alleged facts meet both the locality and the connection tests. *See Taghadomi v. United States*, 401 F.3d 1080, 1084 (9th Cir. 2005).

### B. MOTION TO STRIKE

Defendant moves to strike the testimony of Captain Moore on the grounds that Plaintiff failed to attach copies the sources Captain Moore used to render his sworn testimony. *See* Dkt. 220.

Fed. R. Civ. P. 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Fed. R. Civ. P. 26(a)(2)(B)(ii) requires that expert reports include "the facts or data considered by the witness in forming [opinions]."

Captain Moore's report includes the facts he considered to render his opinion. While courts "will not simply assume that the experts have accurately quoted or characterized [] documents," *Harris v. Extendicare Homes, Inc.*, F. Supp. 2d 1023, 1027 (W.D. Wash. 2011), Defendant has access to Captain Moore's report and all of his sources.  Dkt. 218-2.  Defendant may challenge his characterizations and the Court will not assume that they are accurate, but Plaintiff does not need to attach all sources used to render an expert report for it to be considered.

Defendant's motion to strike should be denied.

**C. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, which is a preponderance of the evidence in most civil cases. *Id.* at 254; *T.W. Elect. Serv. Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Serv. Inc.*, 809 F.2d at 630 (citing *Anderson,* 477 U.S. 242). Conclusory, non-specific statements in affidavits are insufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Fed.*, 497 U.S. 871, 888-89 (1990).

### D. GENERAL NEGLIGENCE

To succeed under maritime law, a plaintiff must show that exposure to relevant asbestos "was a *substantial contributing factor* to his injuries." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1176 (9th Cir. 2016). "Absent direct evidence of causation, a party may satisfy the substantial-factor test by demonstrating that the injured person had substantial exposure to the relevant asbestos for a substantial period of time." *Id.* There is no "magic number of exposures to survive summary judgment," *Cabasug v. Crane Co.*, 989 F. Supp. 2d, 1027, 1052 (D. Haw. 2013), but a plaintiff may not simply present general evidence of possible exposure by relevant asbestos, *McIndoe*, 817 F.3d at 1177 (rejecting theory that "every exposure" to asbestos is a substantial factor in causing mesothelioma). Instead, a plaintiff must present some evidence about the amount or duration of exposure to support "an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id.* at 1176.

While a reasonably jury could infer that Behrmann was exposed to asbestos by Aurora products, he fails to create a genuine issue of material fact that it was a substantial factor in causing his mesothelioma. Behrmann provides evidence that Aurora pumps that used asbestos-containing gaskets and packing were on at least eight ships where he worked and possibly on four more. Dkt. 181-4 at 23, 26–27, 38, 41. Those ships, however, used multiple pump brands. *See* Dkt. 181-4 at 13–15; 38. Behrmann testified that while at Lockheed, he regularly moved between worksites, working on different ships and in different areas of those ships. Dkt. 180 at 4–5. Therefore, the evidence does not indicate how often he worked near Aurora pumps specifically or, more importantly, how often he worked near Aurora pumps when they were being manipulated in a way that released asbestos. Similarly, though evidence indicates that two Aurora fresh-water pumps were on the USS Burton Island, Behrmann does not offer evidence about how frequently he could have exposed to asbestos by work on those pumps. *See* Dkt. 180 at 4. While Behrmann's medical expert rejects the "every exposure" theory of causation and instead testifies that "frequent, repeated, excessive and proximal asbestos exposures," including by work with and around asbestos-containing gaskets and packing, was the direct and only cause of his mesothelioma, he does not consider the amount of exposure that possibly came from Aurora products. Dkt. 181-10 at 8–9. Without evidence about the amount of exposure that possibly came from those products and whether that level of exposure would be medically significant, it would be conjectural to conclude that asbestos-containing Aurora products were a substantial factor in causing Behrmann's mesothelioma.

Consequently, Plaintiff fails to create a genuine issue of material fact as to causation. Defendant's motion to dismiss on the issue of general negligence should be granted.

### E. FAILURE TO WARN

Similarly, Plaintiff's failure to warn claim should be dismissed because he cannot establish that Aurora products caused his mesothelioma. *See Chesher v. 3M Co.*, 234 F. Supp. 3d 693, 697 (D.S.C. 2017) (discussing causation); *Braaten v. Saberhagen Holdings*, 165 Wn.2d 373, 396 (2008).

### III. ORDER

Therefore, it is hereby **ORDERED** that:

- Defendant's Motion to Strike **IS DENIED**;
- Defendant's Motion for Summary Judgment **IS GRANTED**;
- Defendant Aurora Pump is dismissed from this matter.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 1st day of March, 2021.

*[signature]*

ROBERT J. BRYAN
United States District Judge